■ ORLANDO SANTIAGO, Appellant, v MARK FILSTEIN, M.D., Respondent, et al., Defendant. [826 NYS2d 216]—

Judgment, Supreme Court, Bronx County (Kenneth L. Thompson, Jr., J.), entered on or about July 21, 2005, dismissing the action as against defendant Dr. Mark Filstein, M.D., and bringing up for review an order, same court and Justice, entered July 6, 2005, which granted defendant Filstein's motion for summary judgment, unanimously reversed, on the law, without costs, the judgment vacated, Filstein's motion denied and the complaint reinstated as against him. Appeal from the aforesaid order unanimously dismissed, without costs.

This action for medical malpractice and lack of informed consent arises from defendant Filstein's performance of penile augmentation surgery on plaintiff. After discovery, defendant moved for summary judgment, relying primarily on his own affidavit, wherein he offered his medical opinion that his treatment of plaintiff both during and after the surgery did not deviate from good and accepted medical practice, and further, that he had "adequately informed [plaintiff] of the reasonably foreseeable risks and complications resulting from the penile widening and penile lengthening procedure."

Supreme Court granted defendant's motion for summary judgment, finding that his "detailed, specific and factual" affidavit concerning his treatment of plaintiff and his explanation of the risks, in addition to the consent form signed by plaintiff, were sufficient to establish prima facie entitlement to judgment as a matter of law. With regard to plaintiff's opposition, the court held that plaintiff could not rely on two of the departures identified in his expert's "conclusory" affidavit, since they were not included in plaintiff's bill of particulars. The court also held that plaintiff's evidence failed to raise a triable issue as to the alleged lack of informed consent. We reverse.

"The proponent of a summary judgment motion must make a

prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case. Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985] [citations omitted]).

Contrary to the motion court's characterization of defendant's affidavit as "detailed, specific and factual," we find that such affidavit was wholly conclusory and failed to meet his initial burden of demonstrating an absence of medical malpractice (*see id.* at 853 [bare conclusory assertions by defendants that they did not deviate from good and accepted medical practice, with no factual relationship to alleged injury, insufficient to meet burden on summary judgment]). The affidavit merely provides a factual account of defendant's appointments with and treatment of plaintiff, accompanied by broad statements such as "at no point in time during my treatment of [plaintiff] did I depart from good and accepted medical practice," and "it was appropriate for me to perform a penile augmentation procedure" upon plaintiff. In our view, these statements were insufficient to meet defendant's initial burden on the motion, particularly since he was acting as his own expert witness and admitted that "there have been no long-term studies" concerning penile augmentation procedures. Accordingly, defendant's motion should have been denied, at least with respect to the malpractice claim, without consideration of plaintiff's opposition.

In any event, assuming defendant had met his initial burden on either cause of action, the motion should have been denied on the ground that plaintiff's evidence in opposition raised triable issues of fact. Plaintiff submitted an affidavit from a board-certified urologist, who examined plaintiff and identified at least two departures from accepted medical practice, namely, the performance of penile augmentation surgery in the first instance and the use of the "Grip System" as a postoperative medical device. Plaintiff's expert noted that the American Urological Association considers penile surgery and the division of the suspensory ligament in order to increase penile length to be "a procedure which has not been shown to be safe or efficacious." Plaintiff's expert also described the Grip System as "not only painful to wear but extremely dangerous in that it could result in vascular compromise of the shaft of the penis. Such devices are ineffective." Thus, in the opinion of plaintiff's expert, plaintiff experienced "impotence, shortening of the penis, numbness of the penis, curvature of the penis" as a direct result of the procedure performed by defendant, and that "the use of the

'Grip System' exacerbated plaintiff's injuries . . . by further traumatizing a penis which was already showing signs of slow healing and scar formation."

Although the motion court found that plaintiff's expert affidavit was "conclusory," we find that it squarely contradicted defendant's assertions of good and accepted medical practice, thereby necessitating a trial on plaintiff's cause of action for medical malpractice. In addition, contrary to the motion court's holding, these departures identified by plaintiff's expert fell within the allegations of malpractice asserted in plaintiff's bill of particulars, which included, inter alia, allegations that defendant "failed to use more conservative methods of augmentation, failed to use less invasive methods of augmentation, failed to obtain a proper informed consent . . . and failed to prescribe proper post-surgical devices."

We also conclude that plaintiff has raised a triable issue of fact regarding plaintiff's cause of action for lack of informed consent. Although defendant correctly notes that plaintiff signed a consent form, which indicated that it is "possible" that plaintiff may experience decreased sensitivity, decreased angle of erection or sexual dysfunction, the form clearly downplayed these risks by, for example, stating that any sexual dysfunction would "most likely . . . be temporary." Nor did the form disclose the risk of *permanent* sexual dysfunction or internal scarring, the latter of which defendant concedes was the cause of plaintiff's postprocedure erectile problems. In addition, plaintiff's deposition testimony directly contradicts defendant's assertion that he verbally advised plaintiff of the reasonably foreseeable risks of the procedure, and he further alleges that the consent forms he signed shortly before the procedure commenced were never explained to him. Finally, plaintiff's expert addressed the signed consent form by stating that "the authorization for penile augmentation obtained by Dr. Filstein is misleading and minimized the risks of the procedure. Simply having [plaintiff] sign a consent form without explaining the risks of the procedure to him is not a proper informed consent."

In a recent case involving the same defendant and surgical procedure (*Corcino v Filstein*, 32 AD3d 201, 202 [2006]), we held that a triable issue on a lack of informed consent claim was raised by the plaintiff's expert's assertion that the signed consent form was inadequate to meet the doctor's duty under Public Health Law § 2805-d, and the plaintiff's testimony, contradicting that of the doctor, that the risks of the procedure were never explained to him. In light of the conflicting evidence regarding whether defendant apprised this plaintiff of the rea-

sonably foreseeable risks of penile augmentation surgery, including the potential for permanent sexual dysfunction and internal scarring, defendant's motion for summary judgment dismissal of the lack of informed consent cause of action should have been denied. Concur—Andrias, J.P., Nardelli, Gonzalez, Sweeny and Catterson, JJ.